**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MACAULAY WILLIAMS,

    *Plaintiff,*

v.

WELLS FARGO BANK, N.A.,

    *Defendant.*

Civil Action No.: 16-1003 (PGS)(TJB)

**MEMORANDUM**
**AND**
**ORDER**

**SHERIDAN, District Judge.**

Plaintiff Macauley Williams ("Williams" or "Plaintiff"), pro se, claims that Defendant Wells Fargo ("Wells Fargo" or "Defendant") has engaged in predatory and discriminatory lending practices in violation of the Fair Housing Act (FHA), the Equal Credit Opportunity Act (ECOA), and 42 U.S.C. §1981, by offering him especially risky, unfair loan terms based on his race and/or national origin, and by not allowing him to modify his loan.

**Facts and Procedural History:**

Williams is African American, and his nation of origin is St. Vincent and the Grenadines. He is a citizen of New Jersey, owning property (the "Property") in South River. (Am. Comp. ¶¶ 8-9). The record indicates that Plaintiff executed a note on August 21, 2008 from New Jersey Lenders Corp. ("NJ Lenders") to secure the sum of $533,800, payable on September 1, 2038. (Lavery Cert., ECF No. 15, Ex. A). Mortgage Electronic Registration Systems, Inc. ("MERS") acted as nominee for NJ Lenders. The Loan was interest only for the first ten years, with payments for the first five years in the amount of $2,835.81. The Note provided for a five percent

1

late charge for any payment not received 15 days from the due date. (Lavery Cert., Ex. D, ¶ 1). On October 7, 2011, MERS assigned the mortgage to Wells Fargo. (*Id.*, ¶ 2).

There was a modification agreement between Wells Fargo and Williams with an effective date of November 24, 2010, changing the interest rate to 2 percent for 5 years, beginning January 1, 2011, with a monthly principal and interest payment of $1,688.44. (Lavery Cert., Ex. D, ¶ 1). The interest rate then increased annually to 4.375 percent by 2018. (*Id.*) [[ASK JUDGE]]

Plaintiff alleges that he had excellent credit at the time he took out the loan, with an annual income over $100,000, cash reserves of over $100,000, a FICO credit score equal to or greater than 800, a debt-to-income ratio of less than or equal to 45% of the total loan amount, and no history of bankruptcy. (Am. Compl. ¶ 29). He claims that he satisfied Wells Fargo's mortgage guidelines as a highly qualified prime mortgage applicant for a residential mortgage loan. (*Id.*, ¶ 30).

However, he was allegedly issued a "toxic subprime, high-cost adjustable" interest rate home mortgage loan with an adjustable rate mortgage (ARM) interest rate of 6.35%, loan terms that would increase exponentially to as much as 11% after a few years, as well as a balloon payment term of over $500,000. (*Id.*., ¶ 32). The Amended Complaint alleges that between September and October 2008, the "Wells Fargo Affiliated Loan Originator" and Wells Fargo contacted Plaintiff and told him that Wells Fargo had sold him a bad loan that did not meet the origination guidelines, and that Wells Fargo would be communicating with him to rework the toxic subprime loan. (Am. Compl., ¶¶ 34-35). However, the originator then ceased communicating with Plaintiff, and the loan was never modified. (Am. Compl., ¶ 36). Despite these allegations, the record indicates that Wells Fargo did not provide Plaintiff with the Loan.

2

Plaintiff alleges, in a conclusory blanket statement, that Wells Fargo had provided prime loans with lower interest rates to similarly situated white borrowers. Plaintiff cites to a report from the Office of the Comptroller of the Currency ("OCC") and the Department of Justice, which conducted an examination of Wells Fargo lending practices between 2004 and 2009. (Am. Compl. ¶¶ 56-58). The report indicated that Wells Fargo had engaged in a nationwide pattern and practice of national origin and race discrimination in violation of the ECOA and the FHA, selling tens of thousands of excessively risky, structurally unfair loans to qualified African-American borrowers as compared to less qualified white borrowers. (*Id.*, ¶¶ 89-91); *see also United States v. Wells Fargo Bank, NA,* 891 F. Supp. 2d 143 (D.D.C. 2012). Wells Fargo entered into a Consent Order in 2012 to resolve these claims, wherein Wells Fargo agreed to remedy the harm and consented to be enjoined from violating anti-discrimination provisions of the FHA and ECOA. (*Id.*). Although Plaintiff was not part of the Department of Justice Investigation, Plaintiff indicates in the Amended Complaint that his Property and Loan should be bound by this Consent Agreement, which covered the period from 2004-2009. (*Id*, ¶¶ 95-96).

The Amended Complaint alleges that in 2012, Plaintiff attended a Wells Fargo home preservation workshop and applied for mortgage lending and loan modification as a current Wells Fargo customer. (*Id.*, ¶ 113). He provided documentation demonstrating a monthly income of over $10,000, other creditworthiness, and objective criteria related to borrower risk. (*Id.*, ¶ 114). But Wells Fargo denied his lending because of his race and national origin, and not based on creditworthiness, while providing lending to similarly qualified white borrowers, according to Plaintiff. (*Id.*, ¶¶ 115-16). Plaintiff alleges that he made the same mortgage lending requests in 2013, 2014, 2015, and 2016, but was denied each year. (*Id.*, ¶¶ 117-148).

3

Plaintiff did not make the payments on the Loan, according to Defendant. Wells Fargo filed a Complaint for Foreclosure in the Superior Court of New Jersey on July 32, 2012 (*Wells Fargo Bank, N.A. v. Macaulay Williams*, et. al., F-015129-12). The court entered final judgment in the amount of $688,233.25 in favor of Wells Fargo on September 16, 2015, and entered a Writ of Execution for foreclosure directing that the property be sold to satisfy the amounts due to Wells Fargo, plus interest. According to Wells Fargo, the Loan was due for a March 1, 2011 payment, so Plaintiff has lived at the property for the past five years for free. (Defendant's Opposition Brief, at 2).

Plaintiff filed this action pro se on February 23, 2016. There have been several adjournments, and Plaintiff filed an Amended Complaint on June 2, 2016 (ECF No. 14). Defendant filed this motion to dismiss on June 20, 2016 (ECF No. 15). Plaintiff also filed a motion for a temporary restraining order and preliminary injunction on March 21, 2016 to prevent the sale of the Property, but the date of that sale has been moved back. (ECF No. 12). The foreclosure sale is now scheduled to occur in September, 2016. On June 20, 2016, Plaintiff also filed a "motion to request funding to remedy the health and safety violations to the Property," where Plaintiff requests that Wells Fargo pay for safety violations to his Property. (ECF No. 16).

**Legal Standard:**

***Motion to Dismiss***

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d

4

Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001).

**Analysis:**

**I.   Consent Order**

First, the Consent Order entered in *United States v. Wells Fargo Bank*, Case No. 1:12–cv–01150 (D.D.C. 12 July 2012), was voluntarily resolved by the parties to that case. The United States District Court for the District of Columbia had jurisdiction over that matter, depriving this Court of any authority to enforce that Consent Order. *See Hirsch v. Wells Fargo Bank, N.A.*, 2014 WL 903119, at * 3 (N.D. Ohio Mar. 7, 2014). There is also no indication that Williams is a party to that case, and therefore, he does not have standing to enforce that Consent Order. *See id.* (citing *Blue Chips Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) (A consent decree "is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it".). Third Circuit has explained that non-parties lack standing to enforce consent decrees "unless they are intended beneficiaries of the consent

decree and the decree itself contemplates enforcement by non-parties."). *Quadrel v. GNC Franchising, LLC*, 2006 WL 3762072, at *3 (W.D. Pa. 2006), citing *Antonelli v. State of New Jersey*, 419 F.3d 267, 273 (3d Cir. 2005). Plaintiff has not pointed to anything in the Consent Order, attached to his Amended Complaint (ECF No. 14-1), that contemplates enforcement by non-parties.

## II. Fair Housing Act claims

Any claims under the Fair Housing Act (FHA) are barred by the relevant statute of limitations, according to Defendant. The FHA was enacted to make housing discrimination illegal on the basis of race, color, religion, or national origin. *Easthampton Center LLC v. Twp. Of Easthampton*, 155 F. Supp. 2d 102, 110 (D.N.J. 2001). The FHA has a two-year statute of limitations. 42 U.S.C. §3613(a)(1)(A). This provision states: "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice..." *Id.*

The Loan was executed on August 21, 2008, and the Complaint was filed more than seven years later in February 2016. However, the Amended Complaint lists numerous incidents of alleged discrimination. Williams claims that he applied to Wells Fargo for mortgage lending, but was denied due to his race or national origin in 2012, 2013, 2014, 2015 and 2016. Any FHA allegations that occurred after February 23, 2014 would be within the statute of limitations.

Alternatively, Defendant argues that the FHA claim should be dismissed because Wells Fargo did not originate the loan. To successfully establish an FHA claim, Plaintiff must establish specifically that the actions of Wells Fargo, in this case, were either (1) motivated by intentional discrimination or (2) resulted in a discriminatory effect. *See Doe v. City of Butler, Pa.*, 892 F.2d

6

315, 325 (3d Cir. 1989). According to Defendant, because Wells Fargo was not the lender on the Loan, Plaintiff cannot point to any actions or show that the acts of Wells Fargo were motivated by intentional discrimination or had a discriminatory effect. Defendants cite to *Wright v. Castle Point Mortgage*, 2006 WL 1468678 (D.N.J. May 24, 2006), where the court found that, "[t]he undisputed material facts show that Wells Fargo purchased Plaintiff's loans from Castle Point Mortgage…around one month after the closing date," and "[b]ecause Plaintiff alleges discrimination in the terms of the loan contract, and Wells Fargo did not originate the loan, Plaintiff has failed to state a cause of action against Wells Fargo." 2006 WL 1468678, at *4.

But, as mentioned in the statute of limitations analysis, Plaintiff alleges that Defendant discriminated against him when he applied to Wells Fargo for mortgage lending from 2012-2016 and was rejected. The court in *Wright* dismissed the FHA claim because defendant had "no connection to any of the alleged discriminatory acts," not simply because defendant was the servicer and not the originator of the loan.

Nevertheless, there are not enough facts in the Amended Complaint to indicate any discrimination by Wells Fargo for the times when Plaintiff applied for additional lending. Plaintiff only makes conclusory allegations that Wells Fargo provided lending on better terms to similarly-qualified white borrowers. This is Plaintiff's second attempt at amending the complaint, and it appears that any future amendment would be futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2009) ("a district court must permit a curative amendment, unless an amendment would be inequitable or futile."). Plaintiff's FHA claim is dismissed with prejudice.

## III. Equal Credit Opportunity Act claims

Defendant also argues that the Equal Credit Opportunity Act (ECOA) claim should also be dismissed. The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. §1691(a). A "creditor" is defined as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. §1691(a)(e).

Defendant states several reasons why the ECOA claim should be dismissed, including that it is barred by the statute of limitations, and that Wells Fargo is not the "creditor" of the loan. It is unnecessary to go into those arguments as this claim is deficient for the same reason that the FHA claim failed. Again, Plaintiff only provides conclusory allegations that Wells Fargo engaged in discrimination on the basis of race. There are no facts to substantiate these bare allegations. Therefore, this claim is also dismissed with prejudice.

## IV.   Section 1981 claim

In Plaintiff's final claim, he alleges that Wells Fargo violated 42 U.S.C. § 1981 by discriminating against him based on race. However, to establish a § 1981 claim, Plaintiff must still establish that Defendant treated him "differently than others outside of the protected class who were similarly situated." *Anderson v. Wachovia Mortgage Corp.*, 609 F. Supp. 2d 360, 369-70 (D. Del. Apr. 3, 2009). Plaintiff has not established that here, outside of conclusory allegations. The § 1981 claim is dismissed with prejudice.

## V.   Emergency Motion for Funding

The Borough of South River property maintenance department has recently issued code violations to the Property. The maintenance department stated the wood fencing surrounding the

8

property is defective and needs to be replaced, that a defective fence around a swimming pool poses a serious health and safety risk, and that unevenness in the driveway presents a tripping hazard, according to Plaintiff.

In June 2016, Plaintiff filed this emergency motion requesting for Defendant to provide $18,500 to make emergency repairs, remedy health and safety hazards and fix municipal code violations for the Property.

Plaintiff bases this request on N.J.S.A. § 40:48-2.12s, which he claims requires Defendant to be responsible for the care, maintenance, security and upkeep of the Property. The statute reads:

> The governing body of any municipality may adopt ordinances to regulate the care, maintenance, security, and upkeep of the exterior of vacant and abandoned residential properties on which a summons and complaint in an action to foreclose has been filed.

The relevant statute applies to "vacant and abandoned" properties. Although there is dispute between the parties over whether Plaintiff lives on the Property himself or rents it to third parties, there is no allegation the Property is "vacant or abandoned" as the statute requires. Additionally, the statute authorizes towns to "adopt ordinances." It does not entitle Plaintiff to a private cause of action or require Defendant to pay for upkeep of the Property.

## VI. Preliminary injunction

Finally, Plaintiff seeks a preliminary injunction to prevent the sale of the Property. However, the first element of a preliminary injunction is the "likelihood of success on the merits." *Miller v. Mitchell*, 598 F.3d at 147. As detailed herein, Plaintiff cannot establish such a likelihood. When considering the four factors for injunctive relief, "the first two [likelihood of success on the merits and the probability of irreparable harm] are essential." *Batista v.*

9

*Countrywide Home Loans, Inc.*, 2015 WL 4022080, at *1 (D.N.J. June 29, 2015). Plaintiff's request for an injunction is denied.

### ORDER

This matter having come before the Court on a Motion to Dismiss by Defendant Wells Fargo [ECF No. 15], a Motion to Request Funding to Remedy Health and Safety Violations to the Property by Plaintiff Williams [ECF No. 16], and the Motion for a Temporary Restraining Order and Preliminary Injunction by Plaintiff Williams [ECF No. 5]; and the Court having considered the submissions of the parties, having heard oral argument, for the reasons set forth on the record on July 18, 2016, for the reasons stated herein, and for good cause shown,

It is, on this _____9*th*_____ day of August, 2016, hereby

**ORDERED** that Defendant's Motion to Dismiss [ECF No. 15] is **GRANTED with prejudice**; it is further

**ORDERED** that Plaintiff's Motion to Request Funding [ECF No. 16] is **DENIED with prejudice**; and it is further

**ORDERED** that Plaintiff's Motion for Preliminary Injunction [ECF No. 5] is **DENIED with prejudice**.

The clerk is instructed to close this case.

_____
PETER G. SHERIDAN, U.S.D.J.

10